## PEOPLE *v.* DÍAZ, *alias* "MARTILLO."

### APPEAL from the District Court of Humacao.

No. 31.—Decided February 27, 1904.

BILL OF EXCEPTIONS.—A bill of exceptions should contain only that portion of the evidence which is necessary to present the questions of law upon which the exceptions are based, and the judge of the lower court should eliminate all irrelevant matter.

ID.—APPEAL—EVIDENCE—VERDICT.—The Supreme Court cannot reverse a judgment by virtue of an appeal based upon the ground that the verdict is contrary to law or to the evidence, when all of the evidence admitted upon the trial is not submitted for its consideration and questions of law arising during the trial do not appear in the bill of exceptions. In such case it will be presumed that the verdict was rendered in accordance with the law and the evidence.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE.—In order that a new trial may be granted on the ground of newly discovered evidence, it is not only necessary to show that diligence was exercised to obtain said evidence before the trial, and that the same was discovered subsequent thereto, but it is also necessary to show what efforts were made so that the court may be able to determine whether the greatest possible diligence was exercised.

ID.—Where upon a motion for a new trial upon the ground of newly discovered evidence, the testimony of witnesses is offered as a part of the same, it is necessary to show the reason for not offering such evidence upon the original trial and the manner in which the party came to discover that such evidence would be .favorable to his case.

DISMISSAL OF THE CASE.—When in a criminal case the trial is not held within 120 days after the filing of the information, and there is just cause therefor,

seimiento del proceso, que debe, además ser solicitado ante el Tribunal inferior.

Pruebas.—Impugnacion de la Veracidad de los Testigos.—Para impugnar la veracidad de los testigos, fundado en haber hecho manifestaciones anteriores, contrarias á las hechas en el juicio, es necesario que se les muestren antes de interrogarles sobre las mismas, si constaren por escrito, y si las reconocieran como suyas, deberá permitírseles que las expliquen; si las manifestaciones fueren verbales, se les referirán á dichos testigos, con todas sus circunstancias y se els permitirá asímismo que las expliquen.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Ramos* (Juan R.).

Abogado del apelado: *Sr. del Toro* (Fiscal).

El Juez Asociado Sr. Hernandez emitió la siguiente opinión del Tribunal.

El caso sometido á la decisión de esta Corte Suprema, es un recurso de apelación interpuesto por Pedro Diaz, alias Martillo, contra sentencia del Tribunal de Distrito de Humacao que le condena á la pena de muerte.

El apelante fué acusado en 29 de Diciembre de 1902 por el Fiscal de Distrito de Humacao, como autor de delito de asesinato en 1er. grado, cometido del modo siguiente: "La noche del 26 de Agosto próximo pasado, en momentos en que Octavio Reyes Guzmán pasaba por frente á la casa de Juan Martínez Espino, calle de Santa Rosa, donde se hallaba escondido Pedro Diaz, éste salió y disparó á Reyes un tiro, cayendo éste á tierra y falleciendo luego. Este hecho ha sido cometido con premeditación y malicia. Este hecho es contrario á la ley para tal caso prevista, y á la paz y dignidad del Pueblo de Puerto Rico".

Con fecha 13 de Enero siguiente compareció el acusado ante el Tribunal y negó la acusación, solicitando se le concediera un término prudencial para contestarla, término que le fué concedido hasta el día 21 del propio mes; pero el día antes presentó escrito el abogado del reo, con súplica de que fuera requerido el Fiscal para la entrega de la lista de testigos que con su acusación debió presentar, en cumplimiento del Artículo 142 del Código de Enjuiciamiento Criminal, y que

it is not proper to order a dismissal of the prosecution, and a motion for that purpose should also be made in the lower court.

EVIDENCE—IMPEACHMENT OF WITNESSES.—In order to impeach a witness on the ground that he has made at other times statements inconsistent with his present testimony, it is necessary that the statements be related to him with the circumstance of time, place and persons present, and that he asked if he made such statements, and if so, allowed to explain them. If his statements be in writing, they must be shown to the witness before any question is put to him concerning them.

The facts are stated in the opinion.

*Mr. Ramos (Juan R.),* for appellant.

*Mr. del Toro, Fiscal,* for respondent.

MR. JUSTICE HERNÁNDEZ delivered the opinion of the court.

The case submitted to the decision of this Supreme Court is an appeal taken by Pedro Díaz, *alias* "Martillo," from the judgment of the District Court of Humacao, which condemned him to death.

The appellant was accused on December 29, 1902, by the *Fiscal* of Humacao, of the crime of murder in the first degree, committed as follows: "On the night of the 29th of August last, while Octavio Reyes Guzmán was passing in front of Juan Martínez Espino's house, in Santa Rosa street, where Pedro Díaz was hidden, the latter came out and fired a shot at Reyes, who fell to the ground, dying shortly afterwards. This act was committed with premeditation and malice. This act is contrary to the law in such case made and provided, and against the peace and dignity of the People of Porto Rico."

On January 13, 1903, the accused appeared before the court and denied the accusation. He prayed for a reasonable time to answer the same, and was given for the purpose until the 21st of said month. But the day before, counsel for defendant filed a petition praying that the *Fiscal* be required to deliver the list of witnesses which, in compliance with section 142 of the Code of Criminal Procedure, should have been filed with the information and delivered to him in order

debió serle entregada para contestar la acusación. Por
acuerdo del Tribunal se hizo el requerimiento solicitado; y
sin que el Fiscal hubiera presentado la indicada lista, el
abogado del acusado presentó escrito, negando la acusación
formulada contra su defendido y alegando su inocencia, con
expresión de los testigos y peritos de que intentaba valerse.

Señalado para el juicio por jurado el día 16 de Febrero,
solicitó en 10 del propio mes que fueran también citados
como testigos de la defensa, Don Frank Feuille, Don Andrés
B. Crosas, Don Rafael Tirado Verrier, Don Francisco Ce-
pero López Náter y Don Francisco López Cepero Gómez,
como así se dispuso en la misma fecha.

No consta en autos la resolución del Tribunal ordenando
la suspensión del juicio; pero sí aparece que con fecha 17
de Febrero el denfensor de Pedro Díaz presentó escrito en
que manifiesta que habiéndose suspendido dicho juicio en el
día anterior por no haber tiempo suficiente para celebrarlo,
toda vez que tenía otras ocupaciones el Tribunal, suplicaba
se señalase el día 21 para que tuviera lugar, y en caso de
que se estimara conveniente la insaculación de un nuevo
jurado se procediera á ello, citándole para dicho día.

El Tribunal dictó auto en 28 de Abril señalando para la
celebración del juicio el día 18 de Mayo con citación de las
partes y de los testigos de descargo propuestos por la de-
fensa.

Con fecha 6 de Mayo citado presentó escrito el abogado
de Pedro Díaz renunciando la declaración de los testigos
Don Frank Feuille y Don Andrés Crosas, por tener enten-
dido que el primero no podría asistir al juicio por estar al
frente del Departamento de Justicia, y el segundo por sus
muchas ocupaciones, concurriendo además las circunstancias
de no ser ya de importancia las declaraciones de ambos por
haber declarado en el juicio seguido contra Luis Delgado
y otros por perjurio, que guarda relación íntima con la pre-
sente causa, y constar esas declaraciones en el acta de aquel

to answer the same. By decision of the court the request prayed for was granted; and before the *Fiscal* had presented the aforesaid list, counsel for the defendant filed a pleading denying the information against his client and entering a plea of not guilty, with a statement of the witnesses and experts he intended to avail himself of.

February 16 having been set for the jury trial, on the 10th of said month he requested that Frank Feuille, Andrés B. Crosas, Rafael Tirado Verrier, Francisco Cepero, López Náter, and Francisco Cepero López Gómez be also summoned as witnesses for the defense, which was ordered to be done on the same day.

The record does not contain the order of the court suspending the trial; but it appears therefrom that on February 17 counsel for Pedro Díaz filed a petition wherein he stated that said trial having been suspended the previous day because there was not sufficient time in which to hold it, the court being occupied with other matters, he prayed that the 21st be set for the trial, and in case the drawing of a new jury was thought advisable, that it be proceeded with and said jury summoned to appear on that day.

The court made an order on April 28, setting the trial for May 18, and citing the parties and witnesses proposed by the defense.

On the 6th of aforesaid May, counsel for Pedro Díaz presented a writing waiving the testimony of witnesses Frank Feuille and Andrés Crosas, as he understood that the former could not appear at the trial, being at the head of the Department of Justice, nor the latter, by reason of his many occupations; there being, moreover, the circumstance that the testimony of either was no longer of importance, as both had testified at the trial of Luis Delgado and others, for perjury, which is closely related to the present case, and their testimony appeared in the record of said trial, he having, besides

juicio, habiendo interesado además se expidiera certificación del acta del juicio contra Luis Delgado y otros por perjurio y de la sentencia recaida, como también del veredicto dado por el jurado.

Trajéronse á los autos las actas del juicio contra José Moreno, Luis Delgado, Santiago Martínez y Manuel Santori por el delito de perjurio, actas correspondientes á las sesiones que tuvieron lugar el 16 Febrero de 1903, y de las que aparece que en ese juicio declararon como testigos de la acusación el Hon. Frank Feuille, Hon. Francisco López Cepero Nater, el capitan de la Policía Insular, Mr. Wilcox, Don Francisco Bussó Cabrera, Don Andrés Crosas, Martín Julbe y Pedro Astacio, y como testigo de la defensa Celestino Alonso; siendo de notar que Don Francisco López Cepero Nater manifestó que Martín Julbe y Pedro Astacio, al declarar en la causa de los sucesos de la botica, no hicieron acusación alguna contra Pedro Díaz, alias Martillo, por asesinato, y Don Andés Crosas que no había decretado el arresto de Pedro Díaz en vista de la acusación que se le hizo por asesinato, porque no lo creyó conveniente, expresando Mr. Wilcox que el Señor Bussó Cabrera fué llamado por el Hon. Assistant Attorney para firmar la denuncia y cuando acudió al llamamiento no sabía por qué se le llamaba, habiéndola firmado voluntariamente. No consta el detalle ó expresión de lo que declararon los demás testigos, y sí que el jurado por unanimidad declaró inculpable á lo sacusados y que éstos en su consecuencia fueron absueltos.

Merece consignarse que en el juicio por jurado contra Pedro Díaz, alias Martillo, declararon como testigos de cargo Dr. Don Fernando G. González, Don Pablo Font Martelo, Olalla Ortiz, Rafael Martínez, Francisco López Cepero Nater, José Aponte, Pedro Astacio y Martín Julbe, y como testigos de la defensa Martín Julbe, Pedro Astacio, Francisco López Cepero Nater, Octavio Ramírez, Juan Martínez Espino, Luis Berríos Borges y Luis Delgado Carrión, y que

requested that there be issued a certificate of the record of the proceedings against Luis Delgado and others for perjury and of the judgment rendered at said trial, as also of the jury's verdict.

There were brought to the record the minutes of proceedings against José Moreno, Luis Delgado, Santiago Martínez, and Manuel Santori for the crime of perjury, having reference to the sessions held on February 16, 1903, from which it appears that at said trial Hon. Frank Feuille, Hon. Francisco López Cepero Náter, Captain Wilcox of the Insular Police, Francisco Bussó Cabrera, Andrés Crosas, Martín Julbe and Pedro Astacio, testified as witnesses for the prosecution, and Celestino Alonso, as a witness for the defense; and it is to be noted that Francisco López Cepero Náter declared that Martín Julbe and Pedro Astacio, while testifying in the case of the occurrences in the drug store, had made no charge of murder against Pedro. Díaz, alias "Martillo," and Andrés. Crosas stated that he had not decreed the detention of Pedro Díaz on the charge of murder, because he had not deemed it advisable, and Wilcox testified that Bussó Cabrera had been called by the assistant attorney to sign the accusation, and when he responded to the call he did not know what he was wanted for, and voluntarily signed it. The particulars of the testimony given by the other witnesses do not appear, but the record shows that the jury had rendered a verdict of not guilty, the defendant being accordingly discharged.

It should be mentioned that at the jury trial of Pedro Díaz, alias "Martillo," Dr. Fernando C. González, Pablo Font Martelo, Olallo Ortiz, Rafael Martínez, Francisco López Cepero Náter, José Aponte, Pedro Astacio and Martín Julbe, testified as witnesses for the prosecution, and Martín Julbe, Pedro Astacio, Francisco López Cepero Náter, Octavio Ramírez, Juan Martínez Espino, Luis Berríos Borges, and Luis Delgado Carrión, as witnesses for the defense, and that at the re-

á petición del Letrado defensor de Pedro Díaz se hizo constar que Martín Julbe negó haber declarado ante el Juez de Paz en este asunto, y que respecto de Pedro Astacio el Fiscal se opuso á todo interrogatorio fundado en el Artículo 244 de la Ley de Enjuiciamiento Criminal, habiendo tomado excepción.

Igualmente debe consignarse que el defensor de Pedro Díaz ofreció como prueba documental la certificación que estaba unida á los autos de varias constancias del juicio contra Luis Delgado y otros por perjuicio, y el Fiscal, entonces presentó una moción para que fuera reconsiderada dicha prueba, que fué declarada impertinente por el Juez de Derecho, no obstante la oposición del defensor á semejante moción, consignándose en acta la excepción tomada por el Letrado.

Terminadas las pruebas practicadas y cerrados los debates, el Juez de Derecho instruyó al jurado de sus obligagaciones retirándose éste á deliberar; y habiendo pedido instrucciones que le fueron dadas, pronunció veredicto de culpabilidad contra Pedro Díaz, alias Martillo'', en 21 de Mayo del año próximo pasado.

El letrado defensor del acusado presentó escrito en 23 del propio Mayo solicitando nuevo juicio ante otro jurado, por estimar que el veredicto pronunciado era contrario á derecho y á las pruebas, y por haber descubierto nuevas pruebas que favorecían á su defendido, las que acababa de descubrir después del veredicto, á cuyo fin alegó: 1. Que siendo precepto de ley que todo acusado debe ser considerado inocente mientras no se pruebe lo contrario, y axioma jurídico que todo el que imputa la comisión de un delito debe probarlo, el Fiscal ha debido probar que Pedro Díaz no solo era autor de la muerte de Octavio Reyes Guzmán, sino también que obró, con algunas de las circunstancias constitutivas del delito de asesinato en 1er grado, lo que no ha verificado, pues únicamente se ha acreditado la muerte de Octavio Reyes

quest of counsel for Pedro Díaz, account was taken of the fact that Martín Julbe had denied having testified before the justice of the peace in this matter, and that with respect to Pedro Astacio, the *Fiscal*, relying on section 244 of the Code of Criminal Procedure, had objected to any interrogatories, having taken an exception thereto.

It should likewise be mentioned that counsel for Pedro Díaz offered as documentary evidence the certificate, which was attached to the record, of various facts brought out at the trial of Luis Delgado and others for perjury, whereupon the *Fiscal* presented a motion for the reconsideration of said evidence, the same being declared impertinent by the law judge, notwithstanding the opposition of the defense to such motion, the exception taken by counsel being entered upon the record.

The evidence having been taken, upon the close of the arguments the law judge charged the jury, who retired to deliberate, and after asking for instructions, which were given, rendered a verdict of guilty against Pedro Días, *alias* "Martillo," on the 21st of May of last year.

Counsel for defendant filed a petition on the 25th of the same month, praying that a new trial be held before another jury, because in his opinion the verdict rendered was contrary to law and the evidence, and, moreover, he had discovered new evidence favoring his client, said discovery having been made after the verdict had been rendered. In support of his demand he alleged: 1. That it being a principle of law that all persons accused must be considered innocent until the contrary is proven. and a juridical axiom that he who charges the commission of a crime must prove it, the *Fiscal* should have proven that Pedro Díaz was not only the person who killed Octavio Reyes Guzmán, but also that he had acted under some of the circumstances constituting the crime of murder in the first degree,

Guzmán.  2. Que si bien es verdad que hubo tres testigos. como José Aponte, Pedro Astacio y Martín Julbe que declararon haber presenciado que Pedro Díaz fué el autor de la muerte de Octavio Reyes Guzmán, y la concubina de éste Olalla Ortiz manifestó al jurado ser el acusado autor de dicho delito por habérselo manifestado así el interfecto momentos antes de morir, también es verdad que esas declaraciones fueron destruidas por la prueba de descargo, con la cual se ha acreditado que Reyes Guzmán fué herido, no en el. sitio donde cayó, sino frente á la botica del Señor Noya· Julbe de Humacao, en la noche famosa conocida por la de los sucesos de la botica, y que en la calle en donde cayó casi exánime no se disparó esa noche arma alguna de fuego que pudiera ocasionar la muerte de Reyes Guzmán ó de otra persona.  3. Que después de pronunciado el veredicto de culpabilidad había descubierto el acusado que en la ciudad de Humacao existían Don Juan y Don José Bertran Casañas que podían informar al jurado y al tribunal sobre hechos que se relacionan con la presente causa, y de cuyas declaraciones se desprende que los testigos Pedro Astacio, Martín Julbe y José Aponte no presenciaron el acto de ser herido Reyes Guzmán, y que éste no fué muerto por el acusado obrando una de esas declaraciones en las diligencias instruidas por el Juez especial, Sr. Crosas, según noticias que acababa de obtener, habiendo además otro testigo ó sea Don José Martínez Espino que acababa de asegurarle que vió venir herido á Octavio Reyes Guzmán, y al pasar por su casa, á poca distancia, no pudiendo ya mantenerse en pié, cayó al suelo.

El Fiscal en informe oral se opuso á la anterior moción, que solicitó fuese desestimada; y habiendo preguntado el Juez de Derecho si juraba que había practicado todas las diligencias necesarias para conseguir pruebas y había tenido conocimiento ·después del juicio de las que proponía, como

and that this he failed to do, for it has only been shown that Octavio Reyes Guzmán was killed. 2. That although it is true that three witnesses, namely, José Aponte, Pedro Astacio and Martín Julbe testified that they were present when Pedro Díaz killed Octavio Reyes Guzmán, and the latter's mistress, Olalla Ortiz, told the jury that the defendant had committed the crime, because the victim had so informed her shortly before his death, it is also true that this evidence had been destroyed by that for the defense, which showed that Reyes Guzmán was wounded, not at the place where he fell, but in front of Noya Julbe's drug store in Humacao, on the famous night known as that of the "occurrences at the pharmacy," and that in the street where he fell, almost lifeless, no shot had been fired that could have caused the death of Reyes Guzmán, or any other person. 3. That after the verdict of guilty was delivered the defendant had discovered that there lived in the city of Humacao, Juan and José Bertrán Casañas, who could inform the jury and court about facts connected with the present case, and from whose testimony it appears that the witnesses Pedro Astacio, Martín Julbe, and José Aponte were not present when Reyes Guzmán was wounded and that the latter had not been killed by the defendant. One of these depositions, according to information he had just obtained, was on file with the record of proceedings instituted by Special Judge Crosas. There was, besides, another witness, namely, José Martínez Espino, who had just assured him that he had seen Octavio Reyes Guzmán as he passed by, wounded, and that while at a short distance from his house, being by this time unable to keep on his feet, had fallen upon the ground.

The *Fiscal*, in an oral argument, opposed the preceding motion, praying that it be overruled; and the law judge, having asked him (counsel for defendant) if he would swear that he had exercised all necessary diligence in order to obtain evidence, and that now offered had been acquired after the

así lo jurara, dicho Juez señaló el día siguiente para oir dichas pruebas, contra cuya resolución tomó excepción el Fiscal.

En el día expresado y en sesión celebrada al efecto, la representación de Pedro Díaz presentó declaraciones juradas de cinco testigos que lo fueron José Martínez Espino, Feliciano Doble Pou, Juan Guzmán, Luis Castro y José Cintrón Peña de los cuales el primero declara que en la noche del 26 de Agosto de 1902, al sentir unos cuantos disparos, ordenó el cierre de su establecimiento y dejó junta una puerta donde se quedó, habiendo visto venir un hombre quejándose, en quien reconoció á Octavio Reyes Guzmán, al que á pocos pasos vió caer, sin que en la calle en donde vive el testigo y cayó el Reyes se disparara tiro alguno: el segundo, que en la expresada noche del 26 de Agosto encontrándose frente á la botica del Sr. Noya Julbe, donde se desarrollaban los sucesos que trajeron como consecuencia la muerte de varios individuos, vió allí entre otras personas á Octavio Reyes Guzmán, á quien oyó cuando dijo "ay me han matado", desapareciendo Reyes sin que volviese á verlo y sabiendo luego el testigo que había muerto: el tercero, que se encontró en los sucesos de la botica, y allí vió entre otras personas á Octavio Reyes Guzmán, á quien oyó quejarse y manifestar que lo habían matado, desapareciendo el Reyes en seguida: el cuarto, que encontrándose en la calle nueva el día 26 de Agosto ó sea el del tumulto, vino Rosa Peña y lo llamó, sintiendo entonces dos tiros hácia la parte de la botica de Noya Julbe, y al oir los dos tiros, cuando fueron á ver lo que ocurría é iban por frente de Ramón Piñol, se encontraron á iOctavio Reyes con las manos en el pecho, quien al preguntarle Rosa Peña por lo que pasaba, le contestó que le habían matado, continuando Reyes para arriba y el declarante para abajo: y el quinto, que entre ocho y nueve de la noche del 26 de Agosto se encontraba en la calle nueve, y al oir unos disparos corrió á enterarse de lo que ocurría,

trial, he did swear to that effect, whereupon the judge set the following day for the hearing of said evidence, against which decision the *Fiscal* took an exception.

On the aforesaid day, at a session held for the purpose, counsel for Pedro Díaz filed the affidavits of five witnesses, namely, José Martínez Espino, Feliciano Doble Pou, Juan Guzmán, Luis Castro, and José Cintrón Peña. The first of these testifies that on the night of August 26, 1902, having heard some shots he ordered his store to be closed, and leaving one of the doors ajar, he had remained there. He then saw a man coming who was moaning, and recognized him as Octavio Reyes Guzmán. After walking a few steps the man fell. In the street where the witness lives and Reyes fell no shot was fired. The second witness testified that on the aforesaid night of August 26, while in front of the drug store of Noya Julbe, where the incident occurred resulting in the death of several persons, he saw in the crowd Octavio Reyes Guzmán, whom he heard when he said: "They have killed me!" and then disappeared. The witness did not see him again, but learned afterwards that he had died. The third witness testified that he was present when the incident at the drug store took place, and saw there, among other persons, Octavio Reyes Guzmán, whom he heard moaning and saying that he had been killed, and disappeared immediately after. The fourth testified that while in Calle Nueva on the day of the disturbance (August 26) Rosa Peña came along and called him. He then heard two shots in the direction of Noya Julbe's drug store, and when they went to see what had happened and were in front of Ramón Piñol's, they met Octavio Reyes with his hands upon his breast, and being asked by Rosa Peña what had occurred, he said that he had been killed, and proceeded on his way up the street, witness taking the opposite direction. The fifth witness testified that on the night of August 26, between eight and nine o'clock, he was in Calle Nueva, and hearing shots, he ran to see what was the

habiendo encontrado en el trayecto frente á la casa del Señor Piñol á Octavio Reyes, quien preguntado por lo que pasaba contestó "ay que me han matado", después de lo cual el testigo continuó su camino en dirección al sitio del tumulto, tomando el herido la dirección contraria.

Después de oidas las alegaciones de las partes el Juez desestimó la moción denegando el nuevo juicio, y habiendo tomado excepción, el letrado, fundado en el número 3 del Artículo 206 de la Ley de Enjuiciamiento Criminal, dictó sentencia concebida en los siguientes términos: Visto el veredicto del jurado, Pedro Díaz, alias Martillo, será ahorcado el día 7 de Agosto del corriente año, una vez firme la sentencia, con los demás pronunciamientos del caso y que Dios recoja su alma.

Contra esa sentencia interpuso el acusado recurso de apelación que le fué admitido, habiendo presentado antes declaración ó pliego de excepciones, que fué firmado por el Juez de Derecho, y que copiado á la letra dice así:

"En la Corte de Distrito de Humacao. El acusado Pedro Días, alias Martillo, por medio de su defensor, Don Ulpiano Valdes Cajas, opone excepciones á la decisión del Tribunal en la forma siguiente:

1. Por el caso tercero del Artículo 294 de la Ley de Enjuiciamiento Criminal.

Con fecha seis de Mayo de mil novecientos tres, presentó el letrado defensor del acusado escrito al Tribunal, proponiendo como prueba para el acto del juicio, certificación del acta del juicio oral de la causa seguida contra Don Luis Delgado y otros por delito de perjurio, certificación de la sentencia recaida, así como del veredicto pronunciado por el jurado, de cuya certificación se desprendía la inocencia del acusado. Dicha prueba fué admitida por el tribunal y declarada pertinente por providencia del mismo día y se ordenó por el mismo la expedición de las certificaciones solicitadas.

En el acto del juicio por jurado de la causa seguida contra el acusado Pedro Díaz al hacer uso el letrado defensor de esta prueba, fué negada por el Señor Juez Presidente, no obstante haber sido admitida y librada la certificación por el Señor Secretario que es

matter, and on his way, while in front of Piñol's house, he met Octavio Reyes, who, upon being asked what had occurred, replied: "They have killed me!" after which the witness continued toward the scene of the disturbance, the wounded man taking the opposite direction.

After hearing the allegations of the parties the judge overruled the motion for a new trial, to which exception was taken by counsel, based on paragraph 3 of section 296 of the Code of Criminal Procedure, and pronounced judgment as follows: "In view of the verdict of the jury, Pedro Díaz, alias 'Martillo,' shall be hanged on the 7th of August of the present year, as soon as the judgment becomes final, and such other pronouncements as may be proper, and may God have mercy upon his soul."

From this sentence the defendant took an appeal, which was allowed, he having previously filed a bill of exceptions, which was signed by the law judge, and reads as follows:

"In the District Court of Humacao. The accused, Pedro Díaz, alias 'Martillo,' through his counsel, Ulpiano Valdés Cajas, Esq., files the following exceptions to the decision of the court.

"1. Under paragraph 3 of section 294 of the Code of Criminal Procedure.

"On May 6, 1903, counsel for the accused filed with the court a petition offering as evidence to be submitted at the trial a certificate of the minutes of the oral proceedings held against Luis Delgado and others for the crime of perjury, as also certificates of the judgment entered and of the verdict rendered by the jury, from which certificates the innocence of the accused was established. Said evidence was admitted and declared pertinent by the court, and by an order made on the same day the certificates applied for were ordered to be issued.

"When, at the jury trial of the cause against the accused Pedro Díaz, counsel made use of this evidence, it was ruled out by the presiding judge, although it had been admitted and the certificates is-

un funcionario que tiene facultad para expedir esta clase de documentos.

En dichas certificaciones consta que los testigos Pedro Astacio y Martín Julbe al declarar al día siguiente de la muerte de Octavio Reyes, no hicieron al Señor Juez de Paz que instruía el sumario, Don Francisco López Cepero, acusación alguna contra el acusado Pedro Díaz, y que Don Andrés Crosas, nombrado por el Hon. Attorney juez especial para la averiguación del delito, manifestó que no creía conveniente decretar el arresto de Pedro Díaz.

Es indudable que la no admisión de esta prueba, ha causado al acusado Pedro Díaz, gravísimo perjuicio, toda vez que iba encaminada á impugnar la veracidad de los dos testigos de más cargo ó sean Astacio y Julbe, que al preguntársele de acuerdo con el Artículo 245 del Código de Enjuiciamiento Criminal, porque no concordaban sus actuales manifestaciones de haber visto al acusado disparar contra Octavio Reyes, con sus declaraciones prestadas en la causa seguida por los sucesos ocurridos en Humacao la noche del 26 de Agosto de 1902 en cuya noche fué muerto el Reyes no hubieran podido dar razón de su dicho, puesto que en el sumario instruido y en el que declararon los testigos Astacio y Julbe, se investigaba quien era el autor ó autores de la muerte de Octavio Reyes y de los demás que murieron y en la declaración por ellos rendida entonces, no hicieron manifestación alguna contra Pedro Díaz, no obstante haber declarado en el acto del juicio haber sido testigos presenciales de la muerte de Octavio Reyes.

Y tan seguro es que sus anteriores manifestaciones no concuerdan con las declaraciones prestadas en el acto del juicio, que en el documento no admitido por el Tribunal, se lee también "que el Hon. Don Andrés Crosas no arrestó á Pedro Díaz, alias Martillo, por no creerlo conveniente" debiendo advertirse que dicho Señor Crosas, fué designado por el Hon. Attorney Juez Especial para la averiguación de todos los sucesos ocurridos en Humacao en la noche del 26 de Agosto de 1902, y que ante él declararon los testigos Astacio y Julbe, y si éstos hubiesen acusado á Martillo, ¿cómo el Juez Crosas no iba á creer en la conveniencia de dictar mandamiento de arresto contra un acusado de tan grave delito, como es el asesinato?

2. *Por el caso 3 del Artículo 296 del Código de Enjuiciamiento Criminal.*

El número 7 del Artículo 303 del Código de Enjuiciamiento Cri-

sued by the clerk, who is an official with power to issue such documents.

"In aforesaid certificates it appears that when, the day after the death of Octavio Reyes, the witnesses Pedro Astacio and Martín Julbe testified before Justice of the Peace Francisco López Cepero, in charge of the preliminary proceedings, they did not bring any accusation against the defendant Pedro Díaz, and that Andrés Crosas, commissioned by the Attorney General as special judge to investigate the crime, stated that he did not deem it advisable to order the apprehension of Pedro Díaz.

"There can be no doubt that the refusal to admit this evidence has caused very serious injury to Pedro Díaz, inasmuch as it was intended to impeach the veracity of the principal witnesses for the prosecution, namely, Astacio and Julbe, who, had they been asked, in conformity with section 245 of the Code of Criminal Procedure, why their present declaration, that they had seen the accused fire a shot at Octavio Reyes, did not accord with their testimony at the proceedings instituted at the time of the occurrences in Humacao on the night of August 26, 1902, when Reyes was killed, could not have given a reason for their statement; for at the preliminary proceedings, when the witnesses Astacio and Julbe testified, it was sought to ascertain who was the person or persons responsible for the death of Octavio Reyes and of the other victims, and in the testimony then given by them nothing was said against Pedro Díaz, notwithstanding that at the trial they declared that they had been eyewitnesses to the killing of Reyes.

"And so certain is it that their previous testimony does not accord with the testimony given at the trial, that in the document ruled out by the court, it is also stated 'that Hon. Andrés Crosas did not detain Pedro Díaz, *alias* "Martillo," because he thought it not advisable.' It is to be noted that said Crosas had been commissioned by the Attorney General as special judge to investigate all the occurrences taking place in Humacao on the night of August 26, 1902, and that the witnesses Astacio and Julbe had testified before him. Had they accused 'Martillo,' how could Judge Crosas have thought that it was not advisable to issue an order for the arrest of a person charged with so serious a crime as murder?

"2. Under paragraph 3, section 296, of the Code of Criminal Procedure.

"Paragraph 7, section 303, of the Code of Criminal Pro-

minal, autoriza al acusado á solicitar nuevo juicio, una vez declarado culpable, pero antes de pronunciarse el fallo, cuando descubriere nuevas pruebas que pudieran favorecerle, las cuales, á pesar de la actividad razonable no le hubiera sido posible descubrir y aducir en la vista de la causa. En el presente caso, así consta bajo juramento del abogado de Martillo, á quien se le exigió, que después de declarado culpable y antes del pronunciamiento del fallo, descubrió nuevas pruebas que le favorecían, las que á pesar de la actividad y diligencias hechas por el acusado, no le fué posible descubrir antes del juicio, y por tanto no pudo aducir en la vista de la causa.

Se ha cumplido estrictamente por parte del acusado con el precepto terminante del Artículo 303 en su inciso 7, pues se presentaron las declaraciones juradas ante el Secretario de la Corte de Distrito que es funcionario que tiene facultad para tomar juramentos, de cinco testigos, y son tan importantes estas declaraciones y de tan grande trascendencia para los efectos del fallo, que indudablemente al prescindir de ellas, se infringe abiertamente el Artículo 296 del Código de Enjuiciamiento Criminal por el que se tomó excepción.

Entre las declaraciónes que no fueron admitidas, figura la de José Martínez Espino que asegura que en la noche del suceso (26 de Agosto) al sentir unos cuantos disparos ordenó el cierre de su establecimiento y dejó una puerta junta donde se quedó, vió venir un hombre quejándose y al pasar por su lado conoció que era Octavio Reyes ·Guzmán y pocos pasos después lo vió caer y que en la calle que vive no se hizo disparo alguno. Manifestación que echa por tierra las declaraciones de los dos testigos de cargo más importantes, ó sean Pedro Astacio y Martín Julbe que dijeron que Pedro Díaz, alias Martillo, estaba en la casa, digo en la esquina de Juan Martínez Espino, y salió en el momento que los dos iban con el interfecto disparando el tiro que causó la muerte de Reyes. Figuran también las declaraciones de Feliciano Doble y Juan Guzmán que manifiestan que se encontraron en la noche del veinte y seis de Agosto en los sucesos ocurridos frente á la Botica y en donde se hicieron multitud de disparos y que allí se encontraba el Reyes Guzmán, al que oyeron exclamar ''ay me han herido'', lo que prueba evidentemente que la herida la recibió Reyes en aquel sitio, no en el que se dice por Astacio y Julbe, y ésto viene á ser corroborado por las declaraciones de José C. Peña y Luis Castro que tampoco fueron admitidas y en las que manifiestan haber encontrado al interfecto frente á la casa de Don Ramón Piñol con las manos en el pecho y al preguntarle que

cedure, authorizes the defendant to apply for a new trial, after conviction, but before judgment has been rendered, when new evidence is discovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at the trial. In the present case—and so it appears, under oath required of counsel for 'Martillo'—defendant, after his conviction, and before judgment was pronounced, discovered new evidence in his favor, which, despite the diligence displayed by the defendant, he had been unable to discover before the trial, and therefore was not in a position to produce at the hearing of the case.

"The express provision of section 303, under paragraph 7 thereof, has been strictly complied with by the defendant, inasmuch as the affidavits of five witnesses were taken before the clerk of the district court, who is an official having power to administer oaths, and these affidavits are of such material importance for the purposes of the judgment, that in disregarding them section 296 of the Code of Criminal Procedure is no doubt openly violated, for which reason exception was taken.

"Among the declarations that were not admitted is found that of José Martínez Espino, who asserts that on the night of the occurrence (August 26), on hearing shots fired, he ordered his store to be closed, leaving one of the doors ajar, where he remained and saw a man come along moaning, and as he passed by him he recognized Octavio Reyes Guzmán, whom he saw fall after he had walked a few steps, and that in the street where he lives no shot had been fired— a statement which demolishes the testimony of the two more important witnesses for the prosecution, namely Pedro Astacio and Martín Julbe, who testified that Pedro Díaz, *alias* 'Martillo,' was standing at the corner of Juan Martínez Espino's and as both were coming along with Reyes, he had advanced and fired the shot that killed him. There is also the testimony of Feliciano Doble and Juan Guzmán, who testify that they were present on the night of August 26, at the scene of the occurrences in front of the drug store, when many shots were fired; that Reyes Guzmán was there and that they heard him cry 'I am wounded!' which shows beyond a doubt that Reyes received his wound at that place and not at the one mentioned by Astacio and Julbe, and this is borne out by the testimony of José C. Peña and Luis Castro—likewise ruled out—to the effect that they had met Reyes in front of Ramón Piñol's house, with his hands on his breast, and on being asked what was the matter, exclaimed, 'I have been

ocurría, exclamó "me han matado".—Humacao, Junio 10 de 1903. Lcdo., Ulpiano Valdes.   Vo. Bo., Salvador Fulladosa.   Juez Comisionado por el Hon. Attorney General en esta causa.   Es copia, Enrique Lloreda, secretario".

Dicho pliego de excepciones no se ajusta al precepto del Artículo 299 del Código de Enjuiciamiento Criminal, según el cual debía contener solamente las pruebas que fueran necesarias para exponer los puntos de derecho en que se basan las excepciones y el Juez de Derecho, lejos de firmarlo, debió cumpliendo con lo que el mismo artículo previene, eliminar todos los demás extremos contenidos en dicho pliego. No lo hizo así, pues admitió el pliego de excepciones no obstante contener apreciaciones extrañas al mismo, y que son de la competencia judicial. Hay un extremo en ese pliego que atendida la relación suscinta del acta del juicio, en la cual no consta lo que declararon Pedro Astacio y Martín Julbe tiene alguna importancia y es el relativo á que Astacio y Julbe dijeron que Pedro Díaz, alias Martillo, estaba en la esquina de la casa de Juan Martínez Espino y salió en el momento en que los dos iban con el interfecto, disparando el tiro que causó la muerte de Reyes Guzmán.

En el recurso de apelación interpuesto se alegan como fundamentos los siguientes: I. Que el veredicto y fallo son contrarios á derecho, pues en el acto del juicio solamente se probó que Reyes Guzmán fué muerto por un disparo de arma, y si bien es cierto que los testigos Pedor Astacio, Martín Julbe y José Aponte manifestaron que vieron á Pedro Díaz, alias Martillo, cuando disparó contra Reyes Guzmán, ninguno de ellos declaró que Pedro Díaz obrara con premeditación ó alevosía, ni que estuviera en asecho de Reyes Guzmán para darle muerte por lo que faltando como faltan las circunstancias que califican el delito de asesinato en ler grado, según el Artículo 201 del Código Penal, y faltando

killed!' Humacao, June 10, 1903. Ulpiano Valdés, attorney at law. Approved, Salvador Fulladosa, judge commissioned by the Attorney General to hear this case. A true copy. Enrique Lloreda, clerk."

The foregoing bill of exceptions does not conform to the provisions of section 299 of the Code of Criminal Procedure, according to which it should have contained only so much of the evidence as was necessary to present the questions of law upon which the exceptions were taken, and the law judge, instead of signing it, should have stricken out all other matter contained therein, as provided by said section. This he failed to do, for he admitted the bill of exceptions, notwithstanding it contained matters foreign thereto, which pertain to the jurisdiction of the court. There is a point in this bill of exceptions to which—considering the conciseness of the minutes of the trial, which do not contain the testimony of Pedro Astacio and Martín Julbe—some importance should be attached. It is the one relating to the statement of Astacio and Julbe to the effect that Pedro Díaz, alias "Martillo," was at the corner of Juan Martínez Espino's house, and at the moment when they were passing with the deceased he stepped up and fired the shot that killed Reyes Guzmán.

In the appeal taken the following grounds are alleged:

1. That the verdict and sentence are contrary to law, because at the trial the only thing proven was that Reyes Guzmán had been killed by a shot from a firearm; and although it is true that the witnesses Pedro Astacio, Martín Julbe, and José Aponte testified that they had seen Pedro Díaz, alias "Martillo," when he fired upon Reyes Guzmán, none of them testified that Pedro Díaz had acted with premeditation and treachery, or that he had laid in wait for Reyes Guzmán in order to kill him, for which reason the circumstances are lacking which determine the crime of murder in the first degree, according to section 201 of the Penal Code, and the malice and premeditation necessary for the existence

también la malicia y premeditación necesarias para que exista asesinato, no ya de primer grado sino de segundo, es claro que el jurado no pudo pronunciar el veredicto que dió contra Pedro Díaz, alias Martillo, ni el Tribunal condenarlo á muerte, sin que pueda alegarse que el veredicto y fallo se basan en la declaración de Olalla Ortiz, querida del interfecto, la que manifestó que éste en la agonía le dijo que quien lo había matado había sido el acusado Pedro Díaz, pues tal testigo no fué presencial; y además nada expuso sobre el modo y forma como se dió la muerte á Octavio Reyes.

2.   Ser el veredicto y fallo contrarios á las pruebas, pues aunque ante el jurado declararon Pedro Astacio y Martín Julbe en el sentido de que vendo ambos acompañado del interfecto, se les presentó el acusado y disparó contra ellos, hiriendo y dando muerte á Octavio Reyes, esas declaraciones están destruidas por la de Don Luis Delgado que manifestó haber visto al interfecto frente á la botica del Sr. Julbe, tomando parte en los sangrientos sucesos de la noche del 26 de Agosto, y allí presenció cuando fué herido, estando también destruidas por otros testigos que manifestaron que cuando se desarrollaban dichos sucesos vieron al acusado salir de su casa; y claro está por tanto que no teniendo el don de la ubicuidad, y encontrándose en su casa á la hora en que fué herido Octavio Reyes, no pudo ser autor del delito de que se le acusa.

La representación del acusado ante esta Corte Suprema alegó como motivos del recurso los siguientes:

1.   Infracción de los Artículos 11 en su número 1 y 448 en su número 2, ambos del Código de Enjuiciamiento Criminal, toda vez que presentada denuncia jurada contra el acusado por Don Francisco Bussó Cabrera en 25 de Noviembre de 1902, por delito de asesinto cometido en la persona de Octavio Reyes Guzmán, tres meses antes ó sean el 26 de Agosto, se acordó la prisión del mismo en la propia fecha

of murder, whether in the first or second degree, being also absent, it is evident that the jury could not give the verdict it gave against Pedro Díaz, *alias* "Martillo," nor the court condemn him to death; nor could it be alleged that the verdict and sentence are based upon the testimony of Olalla Ortiz, the victim's mistress, who asserted that the latter while in the agony of death had told her that the defendant, Pedro Díaz, was the person who had killed him, because she was not an eyewitness. Moreover, she did not say anything as to the manner in which Octavio Reyes had been killed.

2. That the verdict and the sentence are inconsistent with the evidence, for although Pedro Astacio and Martín Julbe testified before the jury that while they were both coming along in company with Reyes, the defendant appeared and fired upon them, wounding and killing said Reyes, this testimony is destroyed by that of Luis Delgado, who testified that he had seen the victim in front of Julbe's drug store taking part in the bloody happenings of the night of August 26, and there saw him when he was wounded; and it is also destroyed by other witnesses, who testified that while these occurrences were going on they saw the defendant coming out of his house, and it is evident, therefore, that, not possessing the gift of ubiquity, and being in his house when Octavio Reyes was wounded, he could not have been guilty of the crime imputed to him.

Counsel for the defendant alleges before this Supreme Court the following grounds for the appeal:

1. Violation of paragraph 1, section 11, and paragraph 2, section 448, of the Code of Criminal Procedure, inasmuch as a sworn accusation having been made against the defendant by Francisco Bussó Cabrera, November 25, 1902, for the crime of murder committed on the person of Octavio Reyes Guzmán, three months before, viz., on August 26, he was ordered to be committed to jail on the same day the accusation

en que se presentó la denuncia, y habiéndose formulado acusación en 29 de Diciembre siguiente por delito de asesinato en 1er grado, cuya acusación negó Pedro Díaz, fué señalado para la celebración del juicio el 16 de Febrero del año siguiente, suspendiéndose sin causa alguna justificada, contra lo que reclamó su defensor, interesando se celebrara el juicio ante el jurado que estaba reunido ó por otro que al ʼfecto se convocara, reclamación que fué desatendida, señalándose por providencia de 18 de Abril el día 18 de Mayo para la celebración del juicio, esto es después de transcurridos 120 días á contar desde la presentación de la acusación y cuando la causa por tanto debió ser sobreseída.

2. La excepción autorizada por el caso 3 del Artículo 294 del Código de Enjuiciamiento Criminal, toda vez que habiéndose traido á la causa testimonio del acta del juicio celebrado contra Don Luis Delgado y otros por perjurio, en cuyo juicio declaró el Juez de Paz Don Francisco Lopez Cepero que en la investigación que practicara sobre los sucesos ocurridos en Humacao en la noche del 26 de Agosto declararon Pedro Astacio y Martín Julbe, quienes no hicieron cargo alguno contra Pedro Diaz, alias Martillo, como también se recibió declaración á Don Andres B. Crosas, Juez especial nombrado para la investigación de aquellos sucesos, al entonces Capitan de la Policía Insular, Mr. Wilcox, y á otros, el Tribunal no obstante, al solicitar el defensor que se hiciera lectura de dicha acta ante el jurado, como el Fiscal se opusiera á ello, declaró con lugar la oposición, rechazando así una prueba perfectamente ajustada á lo prescrito en el Artículo 245 del Código de Enjuiciamiento Criminl, pues esa prueba venía á demostrar la poca veracidad con que se habían producido en el acto del juicio Astacio y Julbe cuya falsedad ó contradicción se demostraba también con el testimonio de la declaración del Juez especial Sr. Crosas.

3. La excepción autorizada por el caso 3 del Artículo 296 del Código de Enjuiciamiento Criminal, pues habiendo

was made; and an information having been filed on the 20th of December following, for the crime of murder in the first degree, said information being denied by Pedro Díaz, the 16th of February following was set for the trial, which was postponed without just cause. This was objected to by his counsel, who requested that the hearing be had before the jury already impaneled or before another that might be selected for the purpose, which demand was overruled, and an order issued on April 13, setting the hearing for May 18, that is to say, one hundred and twenty days after filing the information, and, therefore, when the prosecution should have been dismissed.

2. Under the exception authorized by paragraph 3 of section 294 of the Code of Criminal Procedure, inasmuch as there having been brought to the trial a certified copy of the minutes of the proceedings had against Luis Delgado and others, for perjury, in which proceedings Justice of the Peace Francisco López Cepero testified that at the investigation held in connection with the occurrences that had taken place in Humacao on the night of August 26, Pedro Astacio and Martín Julbe, who were witnesses, did not bring any charge against Pedro Díaz, *alias* "Martillo," the testimony of Andrés Crosas, special judge, commissioned to investigate said occurrences, that of Captain Wilcox, then a member of the Insular Police, and of other persons, being also given, the court, however, when asked by counsel for the defendant to order that said minutes be read to the jury, the *Fiscal* having objected thereto, sustained said objection, and thereby rejected evidence which was perfectly consistent with the provisions of section 245 of the Code of Criminal Procedure, since said evidence would have shown the scant veracity evinced at the trial by Astacio and Julbe, whose false or contradictory statements were also made manifest by the certified copy of the testimony of Special Judge Crosas.

3. Under the exception authorized by paragraph 3 of

solicitado el acusado nuevo juicio en ejercicio del derecho que le acuerda el número 7 del Artículo 303, por haber descubierto nuevas pruebas que le favorecían y justificaban su inocencia y que no había podido utilizar en el acto del juicio á pesar de la actividad razonable desplegada, le fué denegada tal pretensión, no obstante su solicitud jurada y las declaraciones también juradas de testigos tan importantes y presenciales como José Martínez Espino, dueño de la casa en cuya esquina aseguran Julbe y Astacio se ocultaba Pedro Díaz cuando disparó contra Reyes, y Feliciano Doble, Juan Guzmán y otros que aseguran haber visto venir á Octavio Reyes de la botica ya herido, exclamando "ay me han matado".

El Fiscal estimó que ni el veredicto ni el fallo eran contrarios á derecho y á las pruebas, y en su virtud impugnó el recurso, solicitando se declare sin lugar.

Habiendo sido expuesto cuanto resulta de las copias enviadas á este Tribunal para la resolución del recurso y consignados los motivos en que éste se funda, alegados tanto ante el Tribunal de Humacao como ante esta Corte Suprema, toca ahora examinar la procedencia ó improcedencia de esos motivos.

Para obtener la celebración de un nuevo juicio alega el acusado que el veredicto fué contrario á derecho y á las pruebas. Consta que en el juicio declararon como testigos de cargo Don Fernando P. González, Don Pablo Font Martelo, Olalla Ortiz, Rafael Martínez, Francisco López Cepero Nater, José Aponte, Pedro Astacio y Martín Julbe, y como testigos de la defensa los expresados Pedro Astacio, Martín Julbe y Don Francisco López Cepero Nater, Octavio Ramírez, Juan Martínez Espino, Luis Berríos Borges y Luis Delgado Carrión; pero en el acta del juicio no aparece lo que declarara cada uno de esos testigos, y si bien en el pliego

section 296 of the Code of Criminal Procedure, inasmuch as the defendant had applied for a new trial, thus exercising the right allowed him by paragraph 7 of section 303, he having discovered new evidence in his favor, establishing his innocence, which evidence he had been unable to make use of at the trial, notwithstanding the reasonable diligence displayed by him; and said petition was denied, despite his sworn application and the affidavits of so important eyewitnesses as José Martínez Espino, owner of the house at the corner of which, Julbe and Astacio assert, Pedro Díaz was concealed when he fired upon Reyes, and Feliciano Doble, Juan Guzmán and others, who assert that they saw Octavio Reyes coming from the drug store already wounded and crying "I have been killed!"

The *Fiscal* was of the opinion that neither the verdict nor the judgment was contrary to law and the evidence, and therefore he contested the appeal and requested that the same be dismissed.

Having set forth all the facts that appear from the copies forwarded to this court for the determination of the appeal, and stated the grounds on which the same is based, as alleged both before the Humacao court and before this Supreme Court, we shall now proceed to consider the sufficiency or insufficiency of said grounds.

In order to obtain a new trial the defendant alleges that the verdict was contrary to law and the evidence. It appears from the record that Fernando P. González, Pablo Font Martelo, Olalla Ortiz, Rafael Martínez, Francisco López Cepero Náter, José Aponte, Pedro Astacio, and Martín Julbe, testified at the trial as witnesses for the prosecution, and the aforesaid Pedro Astacio, Martín Julbe and Francisco López Cepero Náter, and Octavio Ramírez, Juan Martínez Espino, Luis Berríos Borges and Luis Delgado Carrión, as witnesses for the defense. But in the record of the trial no mention is made as to what each of these witnesses had testified to, and

de excepciones redactado en la forma que se deja expuesta, se consigna que los dos testigos de cargo más importantes, ó sean Pedro Astacio y Martín Julbe, dijeron que Pedro Díaz estaba en la esquina de la casa de Juan Martínez Espino y salió en el momento en que los dos iban con el interfecto disparando el tiro que causó la muerte de Reyes, no consta en ese pliego lo que declararan los demás testigos, especialmente José Aponte que según el escrito de apelación interpuesto ante el Tribunal de Humacao, fué también testigo presencial, y Olalla Ortiz que según ese mismo escrito de apelación, recibió de los labios de su querido agonizante la manifestación de que lo había matado Pedro Díaz, alias Martillo. Esas cuatro declaraciones combinadas con las de los demás testigos de cargo y de descargo que declararon ante el jurado, llevaron á la conciencia de éste el convencimiento de la culpabilidad de Pedro Díaz y como esta Corte Suprema ignora en su detalle diversas declaraciones prestadas en el juicio, no puede afirmar que el veredicto fuera contrario á derecho ó á las pruebas. Al acusado toca traer justificación cumplida de semejante alegación mediante declaración de excepciones, según el precepto del Artículo 299 del Código de Enjuiciamiento Criminal; y esa justificación no ha venido en forma debida, por lo que es de presumirse que el jurado pronunció su veredicto con arreglo á derecho y á las pruebas practicadas.

No procede, pues la celebración del nuevo juicio con arreglo al número 6 del Artículo 306 del Código de Enjuiciamiento Criminal y tampoco procede con arreglo al número 7 del mismo artículo, ó sea por haber el acusado descubierto nuevas pruebas que no le fué posible descubrir y aducir en la vista de la causa, á pesar de haber desplegado la mayor actividad razonable.

Ciertamente que el Letrado defensor del recurrente á virtud de pregunta del Tribunal, juró que había practicado todas las diligencias necesarias para conseguir pruebas y que

although in the bill of exceptions, prepared in the manner described, it is stated that the two most important witnesses for the prosecution, namely, Pedro Astacio and Martín Julbe, testified that Pedro Díaz was at the corner of Juan Martínez Espino's house, and had come out at the moment both were passing by with Reyes and fired the shot that caused the latter's death, said bill of exceptions makes no mention of the testimony given by the other witnesses, notably José Aponte, who, according to the instrument of appeal filed with the Humacao court, was also an eyewitness, and Olalla Ortiz, who, according to the same instrument of appeal, received from the lips of her dying paramour the information that he had been killed by Pedro Díaz, *alias* "Martillo." The testimony of these four witnesses, taken in connection with that of the other witnesses for the prosecution and for the defense who testified before the jury, led the latter to the conviction that Pedro Díaz was guilty; and this Supreme Court, being unacquainted with the details of all the testimony given at the trial, is not in a position to declare that the verdict was contrary to law and the evidence. It is the defendant's part to produce the proof of such a plea by means of a bill of exceptions, as prescribed by section 299 of the Code of Criminal Procedure; and this proof was not properly produced, whence it is to be presumed that the jury pronounced its verdict in accordance with the law and the evidence submitted.

A new trial, therefore, cannot be granted under paragraph 6 of section 303 of the Code of Criminal Procedure, nor under paragraph 7 of said section, that is to say, on the ground that the defendant has discovered new evidence which he could not have discovered and produced at the trial, although he had displayed the greatest reasonable diligence.

True, counsel for appellant, on being questioned by the court, swore that he had displayed all the efforts necessary to obtain evidence, and that he had learned of the new evi-

había tenido conocimiento de las nuevas que había descubierto después de celebrarse el juicio; pero esa declaración jurada no era bastante al fin apetecido, pues aquél no expresó cuáles eran las diligencias que practicó con el fin de demostrar á juicio del Tribunal la mayor actividad razonable para descubrir y aducir en la vista de la causa las nuevas pruebas de que luego ha intentado valerse.

Llama la atención que el Letrado, al solicitar nuevo juicio, propusiera como testigos que habían de declarar en favor del acusado, á Don Juan y Don José Beltrán Casañas y á Don José Martínez Espino, y sin embargo al producir las pruebas no se acordó de los dos primeros, sino únicamente del tercero, el cual declaró, como tambén Feliciano Doble Pou, Juan Guzmán, Luis Castro y José Cintron Peña, sin que los cuatro últimos fueran citados en el escrito interesando la celebración de nuevo juicio.

Aparece ignorado el motivo de que no fueran producidas las declaraciones de los dos primeros, y una presunción lógica parece indicar que sus téstimonios no habían de ser favorables al acusado, pues de serlo, no se hubiera prescindido de ellos.

Los cinco testigos que declararon eran todos vecinos de Humacao; no hay la más ligera indicación de que estuvieran ausentes desde que se perpetró el delito en 26 de Noviembre de 1902 hasta que fué celebrado el juicio en 18 de Mayo del año siguiente, y tampoco ha manifestado el Letrado como fué que vino á descubrir que las declaraciones de esos testigos podían ser favorables á Pedro Díaz, alias Martillo.

Es en verdad muy inverosimil que Pedro Díaz que compareció ante el Tribunal de Humacao en 13 de Enero de 1903, en cuya fecha negó la acusación contra él formulada, y que su Letrado que desde el día 20 del mismo mes hizo su primera moción en la presente causa, no hubieran descubierto todas las pruebas favorables al acusado antes de celebrarse el juicio, para cuyo acto se señaló el día 18 de Mayo, si hu-

dence discovered by him after the trial had been held; but this sworn declaration was not sufficient for the desired purpose, inasmuch as he failed to state what were the efforts made by him in order to satisfy the court that the greatest reasonable diligence had been exercised to discover and produce at the trial the new evidence which he afterwards tried to avail himself of.

It is to be noted that upon applying for a new trial, counsel proposed Juan and José Beltrán Casañas, and José Martínez Espino, as witnesses who were to testify in favor of the defendant; and yet, when producing the evidence, he forgot about the first two mentioned, and remembered only the third, who testified, together with Feliciano Doble Pou, Juan Guzmán, Luis Castro and José Cintrón Peña, the last four of whom had not been named in the petition for a new trial.

The reason for failing to produce the testimony of the two first mentioned witnesses does not appear, and a logical presumption would seem to indicate that their testimony was not likely to have been favorable to the defendant, as otherwise it would not have been dispensed with.

The five witnesses who testified are all residents of Humacao; there is not the slightest indication that they had been. absent between November 26, 1902, when the crime was committed, and May 18, 1903, when the trial was held, nor has counsel explained how he came to find out that the testimony of these witnesses could be favorable to Pedro Díaz, *alias* "Martillo."

It is, indeed, quite improbable that Pedro Díaz, who appeared before the Humacao court on January 13, 1903, when he pleaded not guilty to the information filed against him, and his counsel, who had made his first move in the case on the 20th of the same month, could have failed to discover all the evidence in favor of the defendant, before the trial, which was set for May 18, had they displayed the greatest reason-

bieran puesto en juego la mayor actividad razonable; y que bastara el anuncio de un veredicto de culpabilidad para que á los dos días descubrieran las nuevas pruebas en que fundan la petición de nuevo juicio.

Con razón, pues, el Tribunal, de Humacao denegó la celebración del nuevo juicio solicitado por la representación del acusado.

Ni sabe alegar como se alega que hayan sido infringidos los Artículos 11 en su número 1 y 448, en su número 2 del Código de Enjuiciamiento Criminal, pues Pedro Díaz fué detenido en 25 de Noviembre de 1902, ó sea en la misma fecha en que fué denunciado como autor del delito, y la acusación se presentó contra él en 29 de Diciembre siguiente, señalándose para la celebración del juicio el día 16 de Febrero del año siguiente; pero como no pudiera tener lugar por falta de tiempo suficiente para celebrarlo, por tener otras ocupaciones el Tribunal, según confiesa la misma representación del acusado, hubo de aplazarse el acto para el día 18 de Mayo, y si no se señaló una fecha anterior, sería porque el Jurado no ejerce sus funciones permanentemente, sino en tiempos determinados.

Hubo, pues, justa causa para que el juicio contra Pedro Díaz no se celebrara dentro del término de 120 días á contar desde la presentación de la acusación, y por tanto no procede en derecho el sobreseimiento del proceso, el que tampoco fué solicitado por el acusado ante el Tribunal inferior, reconociendo así que no había causa justa para semejante pedimento.

Resta por examinar el motivo del recurso fundado en el número 3 del Artículo 294 del Código de Enjuiciamiento Criminal por haber denegado el Tribunal la lectura del acta del juicio por jurado contra José Moreno, Luis Delgado, Santiago Martínez y Manuel Santori por el delito de perjurio, con cuya denegatoria, según se alega, se privó al acusado del derecho que le otorga el Artículo 245 del Código citado.

able diligence; and that at the mere announcement of a verdict of conviction, two days could have sufficed them to discover the new evidence on which their petition for a new trial is based.

The Humacao court, therefore, properly denied the new trial applied for by counsel for the defendant.

Nor can it be alleged that paragraph 1, section 11, and paragraph 2, section 448, of the Code of Criminal Procedure have been violated, for Pedro Díaz was arrested November 25, 1902, the very day he was accused of the crime, and the information against him was filed on the 29th of December following, the trial being set for February 16, 1903; but as it could not be held for lack of the necessary time, the attention of the court being taken up by other matters, as counsel for the defendant has himself admitted, the hearing had to be postponed to May 18, and if an earlier date was not set, it was probably because the jury does not sit permanently but at stated times.

There was, then, sufficient reason for not holding the trial of Pedro Díaz within one hundred and twenty days after the filing of the information, and therefore the dismissal of the prosecution is not proper, nor was it demanded in the court below by the defendant, who thereby recognized that there was no good reason for such a demand.

There remains to be examined the ground of the appeal, based on paragraph 3 of section 294 of the Code of Criminal Procedure, namely, the court's refusal to allow the reading of the minutes of the jury trial of José Moreno, Luis Delgado, Santiago Martínez, and Manuel Santori, for the crime of perjury, by which refusal, it is alleged, the defendant was deprived of the right granted him by section 245 of aforesaid Code.

Ese artículo dice textualmente: "También puede ser im-
pugnada la veracidad de un testigo por medio de prueba
que demuestre, que en ocasiones anteriores ha hecho mani-
festaciones que no concuerdan con su actual declaración;
pero antes de hacerlo se le referirán dichas manifestaciones,
con expresión de la época, lugares y personas que hubieren
estado presentes al hacerlas, y se le preguntará si dichas
manifestaciones fueron hechas por él, permitiéndosele que
las explique, si contestare afirmativamente. Si las mani-
festaciones fueren escritas, se enseñarán al testigo antes de
interrogarle acerca de ellas".

Del texto legal transcrito se desprende que el acusado
pudo impugnar la veracidad de los testigos Pedro Astacio y
Martín Julbe demostrando que anteriormente tabían hecho
manifestaciones que no concordaban con las declaraciones
que acababan de prestar en el juicio; pero antes de acudir
á aquella prueba, era necesario que á esos testigos se les re-
firieran dichas manifestaciones con expresión de la época,
lugares y personas que estuvieron presentes al hacerlas, y
se les preguntara si tales manifestaciones fueron hechas por
ellos, explicando en caso afirmativo el motivo de su proceder
y mostrándoles sus manifestaciones, en el caso de ser escri-
tas, antes de interrogarles sobre ellas.

No consta que el Letrado de Pedro Díaz después de haber
prestado Astacio y Julbe sus declaraciones en la presente
causa, impugnara la veracidad de las mismas refiriéndoles
las manifestaciones contrarias que anteriormente hubieron
hecho para que contestaran sobre la realidad de las mismas
y en caso afirmativo las explicaran; apareciendo solamente
del acta del juicio que Julbe negó haber declarado ante el
Juez de Paz sobre el hecho de que se trata, y que respecto
de Astacio el Fiscal se opuso al interrogatorio fundado en el
Artículo 244 del Código de Enjuiciamiento Criminal, ha-
biendo tomado el Fiscal excepción, lo que demuestra que tal
interrogatorio fué hecho, pues de no ser así, no hubiera sido

The section in question reads: "A witness may also be impeached by evidence that he has made at other times statements inconsistent with his present testimony; but before this can be done the statements must be related to him, with the circumstances of time, places and persons present, and he must be asked whether he made such statements, and if so, allowed to explain them. If the statements be in writing, they must be shown to the witness before any question is put to him concerning them."

From the text of the law, as quoted above, it appears that the defendant could have impeached the veracity of the witnesses Pedro Astacio and Martín Julbe, by showing that they had previously made statements inconsistent with the testimony just given by them at the trial; but before resorting to this evidence, he was required to relate said statements to these witnesses, with the circumstances of time, places and persons present when made, and to ask them whether they had made such statements, and if so, allow them to explain their reason for making them; and if the statements were in writing they should have been shown to the witnesses, before putting any question to them with reference thereto.

It is not on record that after Astacio and Julbe had testified in the present prosecution, counsel for Pedro Díaz had impeached their veracity and related to them the contradictory statements they had previously made, that they might answer as to the truth thereof, and if made by them, explain the same. In the minutes of the trial there appears only the fact that Julbe had denied having testified before the justice of the peace with reference to the act in question, and as to Astacio, that the *Fiscal* had objected to the interrogatory, based on section 244 of the Code of Criminal Procedure, an exception thereto having been entered by him, which shows that the interrogatory was propounded, as otherwise the

el Fiscal sino el defensor de Díaz quien hubiera tomado excepción.

Aún más, en el acta del juicio por perjurio consta que Don Francisco López Cepero Nater manifestó que Astacio y Julbe, al declarar en la causa sobre los sucesos de la botica, no habían hecho acusación alguna contra Pedro Díaz por asesinato; pero se ignora si en esa causa declararon los testigos Astacio y Julbe y si por tanto tuvieron oportunidad de ser examinados sobre la muerte del desgraciado Reyes Guzmán. Este testigo Don Francisco López Cepero Nater declaró también en la presente causa, y por tanto el defensor de Pedro Díaz tuvo oportunidad de preguntarle sobre las manifestaciones que en su caso hicieran Astacio y Julbe al declarar en la causa sobre los sucesos de la botica, aparte de que no cabe afirmar que no fuera interrogado en tal sentido, pues ni en el acta del juicio ni en el pliego de excepciones consta la declaración de López Cepero.

En cuanto á la declaración de Don Andrés Crosas obrante en el acta del juicio por perjurio, no podía traerse á esta causa para impugnar la veracidad de los testigos Astacio y Julbe, pues Crosas, al ser preguntado en aquel juicio por la razón de no haber decretado el arresto de Pedro Díaz en vista de la acusación que se le hacía por asesinato, contestó que porque no lo creía conveniente y tal contestación lejos de demostrar que Astacio y Julbe no acusaron ante Crosas á Pedro Díaz, indica que fué acusado, pudiendo partir muy bien de Astacio y Julbe la acusación, por más que así no se consigne.

De todos modos si el defensor de Pedro Díaz quería demostrar que los testigos Pedro Astacio y Martín Julbe no habían hecho acusación alguna contra Pedro Díaz en la investigación que de los sucesos de la botica hizo el Juez de Paz Don Francisco López Cepero Nater, no debió ir por esta prueba al acta del juicio por perjurio, sino á las dliigencias instruidas en averiguación de los sucesos de la botica.

exception would have been taken, not by the *Fiscal,* but by counsel for Díaz.

Moreover, in the minutes of the trial for perjury it is recorded that Francisco López Cepero Náter declared that Astacio and Julbe, while testifying in the proceedings connected with the occurrences at the drug store, had made no charge of murder against Pedro Díaz; but it is not known whether Astacio and Julbe testified in said proceedings, and, therefore, whether they had an opportunity to be examined with reference to the killing of the unfortunate Reyes Guzmán. This witness, Francisco López Náter, also testified in the present trial, and, therefore, counsel for Pedro Díaz had an opportunity to question him as to the statements, if any, made by Astacio and Julbe, while testifying in the proceedings connected with the occurrences at the drug store, although it cannot be asserted that he was so questioned, for neither in the minutes of the trial nor in the bill of exceptions does there appear any mention of López Cepero's testimony.

As regards the testimony of Andrés Crosas, which appears on the minutes of the trial for perjury, it could not be brought here to impeach the veracity of the witnesses Astacio and Julbe, because Crosas, when questioned at said trial as to the reason he had for not ordering the arrest of Pedro Díaz, in view of the accusation of murder brought against the latter, replied that he had not deemed it advisable to do so, which reply, instead of showing that Astacio and Julbe had not accused Pedro Díaz before Crosas, indicates that he had been accused, and the accusation might well have come from Astacio and Julbe, although not so stated.

At all events, if counsel for Pedro Díaz sought to show that the witnesses Pedro Astacio and Martín Julbe had made no accusation against Pedro Díaz at the investigation of the incidents at the drug store, held by Justice of the Peace Francisco López Cepero Náter, he should not have gone for

Trayendo al presente juicio testimonio de las declaraciones prestadas por Astacio y Julbe en las diligencias instruídas por Don Francisco López Cepero Nater, declaraciones que dicho sea de paso fueron prestadas ó no, pues Julbe ha negado en el presente juicio haber declarado ante dicho Juez de Paz y se ignora lo que haya dicho Astacio sobre el particular, hubiera podido el defensor de Pedro Díaz obtener del Tribunal que se leyeran esas declaraciones á Julbe y Astacio antes de interrogarles acerca de ellas.

El jurado, pues, no tenía necesidad de que en el acto del juicio se hiciera lectura del acta del juicio por perjurio, pues esa acta no le hubiera dado luz alguna para apreciar los mayores ó menores grados de veracidad de los testigos Pedro Astacio y Martín Julbe.

En resumen, no aparece que el veredicto del jurado sea contrario á derecho ó á las pruebas, ni que se empleara la mayor actividad razonable para descubrir ó aducir oportunamente en la vista de la causa las pruebas suministradas después de pronunciado dicho veredicto, como tampoco aparece que faltara justa causa para el aplazamiento del juicio hasta después de transcurridos 120 días después de formulada la acusación y que fuera privado el acusado del derecho que tenía de impugnar la veracidad de los testigos de cargo. El Tribunal, pues, debe confirmar la sentencia que dictó el Tribunal de Humacao en 25 de Mayo del año próximo pasado, con las costas á cargo del recurrente.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Quiñones, y Asociados Sulzbacher y MacLeary.

El Juez Asociado Sr. Figueras no formó Tribunal en la vista de esta causa.

this evidence to the minutes of the trial for perjury, but to those of the proceedings instituted for the purpose of investigating the occurrences at the drug store. By bringing to the present trial a certified copy of the testimony given by Astacio and Julbe at the investigation held by Francisco López Cepero Náter—which testimony, by the way, may or may not have been given, for Julbe has denied in the present trial that he had testified before said justice of the peace, while Astacio's testimony is not known—counsel for Pedro Díaz could have obtained from the court permission to have their testimony read to Julbe and Astacio before questioning them with reference thereto.

The jury, then, did not require the minutes of the trial for perjury to be read to them on the trial, because said minutes could not have given them any light for the purpose of appreciating the greater or lesser degree of veracity of the witnesses Pedro Astacio and Martín Julbe.

Briefly, the verdict of the jury does not appear to have been contrary to law or the evidence, nor has it been shown that the greatest reasonable diligence was displayed to discover, and produce in due time at the trial, the evidence submitted after the verdict had been rendered. Neither does it appear that there was a lack of good reason for postponing the trial one hundred and twenty days after the filing of the information, nor that the defendant was deprived of his right to impeach the veracity of the witnesses for the prosecution. The court, therefore, must affirm the judgment rendered by the court of Humacao, on May 25, 1903, with costs against the appellant.

*Affirmed.*

Chief Justice Quiñones and Justices Sulzbacher and MacLeary concurred.

Mr. Justice Figueras did not sit at the hearing of this case.